Mark F. Anderson (SBN 44787)
Anderson, Ogilvie & Brewer LLP
1736 Stockton Street, Ground Floor
San Francisco, CA 94133
Telephone: (415) 651-1951
Fax: (415) 500-8300
mark@aoblawyers.com

Attorneys for Plaintiff Inna Borboa Badran

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Inna Borboa Badran, ) | Case No. |
| ) | |
| Plaintiff, ) | |
| ) | COMPLAINT |
| v. ) | |
| ) | (Fair Credit Reporting Act |
| ) | 15 USC § 1681 et seq) |
| Equifax Information Services LLC, ) | |
| ) | DEMAND FOR JURY TRIAL |
| ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**Preliminary Statement**

1.  This is an action for damages by Inna Borboa Badran against Equifax Information Services LLC for violations of the Fair Credit Reporting Act, 15 USC §1681 *et seq* (FCRA).

**The Parties**

2.  Plaintiff Inna Borboa Badran is a resident of North Hollywood, California. She was formerly known as Inna Spivak Borboa.

3.     Defendant Equifax Information Services LLC ("Equifax") is a limited liability company organized under the laws of Georgia and is a consumer reporting agency as defined by the FCRA.

**Jurisdiction & Venue**

4.     The court has federal question jurisdiction over the Fair Credit Reporting Act (FCRA) claims pursuant to 15 USC §1681p.

5.     Venue is proper in this district. The defendants are subject to personal jurisdiction within this district.

**Description of the Case**

6.     Beginning on a date unknown to plaintiff, someone stole plaintiff's identity. The fraudster opened tens of accounts in plaintiff's name.

7.     Defendant Equifax prepared and issued credit reports concerning plaintiff that included inaccurate and fraudulent information stemming from the identity theft, which reports were sent to plaintiff's creditors and potential creditors.

8.     Plaintiff first discovered the fraudulent accounts on her Equifax credit reports in August 2012 when she applied for a car loan.

9.     After Equifax failed to correct plaintiff's correct reports following her disputes, plaintiff filed a civil action in this Court against Equifax, *Borboa v Equifax Information Services*, LLC, Case No. 3:13-cv-02637 on June 5, 2013.

10.    In December 2013 plaintiff agreed to a settlement with Equifax. As part of the settlement, Equifax deleted the accounts that did not belong to her.

11.    In November 2014, plaintiff applied for a credit card loan from Discover. However, Discover denied her application for a loan.

12.    The credit denial prompted plaintiff to download her Equifax credit report. She obtained her credit report using her married name and social security number and found it had no

negative accounts—it had the same accounts as those reported when Equifax agreed to the original settlement.

13. However, when plaintiff download her Equifax report using her maiden name and social security number, the report included the negative accounts that Equifax had deleted as part of the settlement.

14. Inexplicably, Equifax had created two credit files for plaintiff—one corrected report under her married name and social security number and one under her maiden name that included the identity theft related accounts.

15. On November 2014, plaintiff sent Equifax dispute letters concerning fraudulent accounts in the credit report Equifax was maintaining under her maiden name.

16. On or about December 5, 2014, plaintiff talked to an Equifax representative in its fraud department about the reinserted accounts. After plaintiff explained that Equifax was reporting fraudulent accounts under her maiden name, the representative said the reason for the two reports was that "everything would not fit in one report."

17. On December 17, 2014, Equifax sent plaintiff the results of its investigation. Equifax's representative had sent Automated Consumer Dispute Verification requests to the creditors that had been reporting the fraudulent accounts to Equifax under plaintiff's former name. The creditors verified the accounts belonged to her and in turn Equifax reported (falsely) to plaintiff in a report that the accounts belonged to her.

18. After Equifax refused to delete the report under her former name that included accounts that did not belong to her, plaintiff filed a second civil action against Equifax, *Badran v Equifax Information Services*, LLC, No. 3:15-cv-00230 CRB.

19. In July 2015, plaintiff and Equifax agreed on a settlement of the second action. As part of the settlement, Equifax attached plaintiff's credit report which omitted the accounts that did not belong to her.

20. A year and a half later, plaintiff obtained he Equifax credit report dated January 5, 2017. She noticed it included an address in Whittier, California that did not belong to her, which was one of the fraudulent addresses that Equifax had included in plaintiff's Equifax reports in March 2014.

21. Plaintiff downloaded her Equifax credit report on April 20, 2017. The report included eleven of her Synchrony store accounts each of which was marked "Account Closed by Credit Grantor." Each of the Synchrony accounts had been in good standing with no late payments.

22. On April 21, 2017, plaintiff talked to an Equifax representative about the fraudulent Whittier address and the fact that Synchrony had closed her accounts. The representative said that Equifax had two files under her name and SSN. She provided confirmation numbers on each file; one ended in 9149 and one ended in 9361. The report she had obtained the day before had the latter confirmation number. Plaintiff asked the Equifax representative to send her the report ending in 9149, but Equifax has never sent it to her.

23. Plaintiff talked to Synchrony representatives who said closed the accounts because of confusing information they had received from Equifax—a person with two credit profiles.

24. Once Synchrony closed the Synchrony TJ Max account, plaintiff was not able to make a payment on the account when it was due. This resulted in Synchrony/TJ Max reporting plaintiff was delinquent in March 2017. The late report appeared on plaintiff's Experian and Trans Union credit reports. Plaintiff sent a dispute to Experian, but TJ Max verified the late report and refused to delete the report.

25. Equifax's inaccurate reporting severely lower plaintiff's credit score

26. **Plaintiff's Damages.** As a result of defendant's conduct, plaintiff has suffered actual damages in the form of (a) lost credit opportunities, b) harm to credit reputation and credit scores, and (c) emotional distress in the form of mental pain, anguish, humiliation, embarrassment, anxiety and frustration. Plaintiff will continue to suffer the same for an indefinite time in the future, all to her

great detriment and loss.

**First Claim against Equifax**

27. Plaintiff incorporates by reference ¶¶ 1 through 26.

28. Section 1681e(a) of the FCRA provides that every consumer reporting agency shall maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under section 1681b of the FCRA. These procedures include requiring prospective users of the information to identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose.

29. Section 1681e (b) requires every consumer reporting agency to maintain reasonable procedures to assure maximum possible accuracy of the information in reports concerning plaintiff.

30. Section 1681g requires every consumer reporting agency that receives a dispute that a consumer is a victim of identity theft to delete any fraudulent accounts;

31. Section 1681i (a) (1) provides that if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, or delete the item from the file within 30 days of receiving the consumer's dispute notice.

32. In conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to review and consider all relevant information submitted by the consumer.

33. Equifax negligently violated the FCRA by failing to follow and maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under Section 1681b as required by Section 1681e (a) and by failing to comply with the requirements of Section 1681b.

34. Equifax failed to employ and follow reasonable procedures to assure maximum possible

accuracy of plaintiffs credit reports, information and file in violation of Section § 1681e(b).

35. Equifax failed to block identity theft information as required by Section § 1681c-2.

36. Within the two years preceding the filing of this complaint, plaintiffs notified Equifax of inaccuracies contained in its reports and asked it to correct the inaccuracies. Equifax failed to conduct a reasonable reinvestigation of the inaccuracies that plaintiffs disputed in violation of § 1681i. Equifax failed to review and consider all relevant information submitted by plaintiffs.

37. Equifax failed to marked accounts as disputed as required by the FCRA.

38. As a result of the above-described violations, plaintiff sustained damages.

39. Defendant Equifax's violations of the FCRA were willful and therefore plaintiff is entitled to also seek statutory and punitive damages.

**PRAYER**

WHEREFORE, plaintiff prays for judgment as follows:

A. Actual, statutory and punitive damages;

B. Costs and attorney's fees; and

C. Such other relief as the Court may deem proper.

Dated: May 31, 2017.
ANDERSON, OGILVIE & BREWER LLP

By */s/ Mark F. Anderson*
Mark F. Anderson
Attorney for Plaintiff

DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues.

Dated: May 31, 2017.
ANDERSON, OGILVIE & BREWER LLP

By */s/ Mark F. Anderson*
Mark F. Anderson, Attorney for Plaintiff